STATE v. ALEX. JERNIGAN.

(Filed 27 March, 1912.)

1. Appeal and Error—Right of Trial by Jury—Manner of Trial Judge—Record—Constitutional Law.

The Supreme Court is confined to what appears in the record, and cannot award a new trial upon the ground assigned, merely that the manner of the judge was such as to deprive the prisoner, convicted of murder, of his right to a trial by jury.

2. Appeal and Error—Verdict, Directing—Intimation—Acquiescence.

When upon intimation from the trial judge that he would charge the jury to return a verdict of murder in the second degree, if they believed the evidence beyond a reasonable doubt, counsel for the prisoner said he would not address the jury, the remark of the attorney implies that the truth of the evidence could not be contested, and the intimation will not be held as reversible error on appeal.

**3. Appeal and Error—Intimation—Instructions—Variation.**

In this case, before prisoner's attorney had begun his address to the jury, upon a trial for murder, he said he would not do so upon an intimation from his Honor that he would charge them to return a verdict of murder in the second degree if they believed the evidence beyond a reasonable doubt. The court subsequently charged the jury to find a verdict of murder in the second degree if they were satisfied beyond a reasonable doubt that the facts were as testified to by the State's witnesses. The prisoner's attorney called the court's attention to the difference between the intimation and the charge as given, and was offered and refused an opportunity to address the jury: *Held,* no error.

**4. Appeal and Error—Remarks of Judge—Exceptions, Specific—Practice.**

Exceptions to remarks of the trial judge in a colloquy with counsel, after the charge to the jury had been given, but in their presence, will not be considered on appeal when the objectionable matter relied on is not pointed out.

**5. Appeal and Error—Objections and Exceptions—Incorrect Record—Practice.**

This Court can only consider the exceptions properly presented in the record, and this rule will not be departed from because the appellant's attorney insists here that the case is not a correct statement of the case and that he was not given an opportunity to note his exceptions.

APPEAL from *Peebles, J.,* at September Term, 1911, of JOHNSON.

The defendant was convicted of murder in the second degree and sentenced to serve a term of twenty-five years at hard labor in the State's Prison.

The evidence of the principal witness for the State, George D. Langley, was as follows: "July 1st, lived in Wendell. I knew Albert Todd, G. N. Langley, Harrison Pittman, Lewis Jernigan. Todd and myself went to millpond two miles from Wendell; went just before night; went to set nets, but did not fish any. Bought cider, sardines, etc. Stayed there two hours. Drank pint of liquor on our way. Went in one-horse wagon, flat bottom, but no sides. I was sitting on right-hand side of wagon; Todd was on the other side, feet hanging down. Father, Lewis, and Pittman were in front of wagon. Defendant was

lying down on his back, feet hanging out at rear end of wagon. Did not see anything in hand of defendant. One-half mile after leaving mill, defendant said some one had stolen his money. Todd asked who he thought got it. He said some one on the wagon got it. Todd said: 'You don't believe I got it, do you?' Defendant said: 'Yes, I think you got it,' or, 'I had as soon believe you got it as any one.' Todd got off the wagon and started around the wagon towards Jernigan. I got off and met Todd before he got to Jernigan, and got him back on the wagon, and I got on and we went about fifty yards, when defendant said: 'Albert, you have got my money, and I want you to give it to me.' Defendant had a knife open in his hand. Todd got off the second time, and I got him back second time; caught hold of him and told him to get back on wagon, and he did so. Fifty yards farther defendant said: 'No son of a bitch can take my money and get off easy.' Todd said: 'Don't let us have any more words about the money. I will not say anything more about it if you don't.' Defendant said: 'It was my money, and you taken it from me.' Todd got off the third time and went to him. When I got there he was standing behind the wagon, reaching over and hitting Jernigan with his fists. I saw him have nothing else. Two or three times; missed him a time or two and hit wagon beside him. I went behind Todd and put my arm around him and pulled him away, about three steps backwards. Defendant got off the wagon and went to Todd and cut him in breast and left side with pocket-knife, and cut me on arm with same lick. Defendant then left road and went in woods. Todd ran back towards mill and called me. I told him I could not go, I was cut, but to come on and let us go home. Saw Jernigan next Sunday evening. It was a big, new knife. I saw the blade. [Blade of knife exhibited.] The one I saw. I and father told defendant to shut up his knife. Todd about twenty-five or thirty. He was logging for mill, and I was working at the mill, running edger. Todd was a small man, weighing about 150 pounds, about 5 feet 4 inches high. Everybody took a drink of whiskey. Todd and defendant seemed to be friendly. I drank three glasses of cider. I don't know how much others drank. Defendant loaned Todd

some money at the mill. Starlight night; think moon was not shining. Road through woods where cutting took place; woods on both sides. The licks that hit the bed of wagon seemed loud. Defendant never fell or got between wagon and wheels. Did not see Jernigan after he ran in woods. I stated on former trial that Jernigan got off wagon and went to Todd. I did not see him eating apples. I have been indicted for fighting."

At the conclusion of the evidence offered by the State, counsel for the defendant announced that the defendant would not introduce evidence.

As counsel for the defendant were about to address the jury, his Honor said: "You may speak three hours, if you wish, but I am going to charge, if the jury believe the evidence beyond a reasonable doubt, they will find the defendant guilty of murder in the second degree." Thereupon one of the counsel for the defendant announced to the court that, in view of his Honor's statement, he would not address the jury.

His Honor then proceeded to charge the jury, and defined the crimes of murder in the first degree, murder in the second degree, manslaughter, and justifiable homicide; and charged, in part: "If the jury are satisfied beyond a reasonable doubt that the facts are as testified by the witnesses for the State, you will find the defendant guilty of murder in the second degree."

After his Honor concluded his charge to the jury, one of the counsel for the defendant stated to his Honor that he had not charged as he said he would.

His Honor replied: "Of course, I did not use the exact language, because the Supreme Court has suggested a better formula, but the effect of my charge is the same; and now that you know what my charge is, if you wish to address the jury you can do so, and I will again charge the jury after you have made your speech."

The counsel then said that he would not address the jury, and asked the court to note an exception to the remarks made by the court; whereupon his Honor directed the jury to retire and make up their verdict.

*Attorney-General Bickett and Assistant Attorney-General T. H. Calvert for the State.*

*Ray & Harris for defendant.*

ALLEN, J. We cannot consider the contention that the manner of the judge was such as to deprive the defendant of his right to a trial by jury, because we are confined to the record, and nothing appears therefrom except what was said. Upon consideration of the evidence, it is certain that the defendant could not have been acquitted on the ground of self-defense, in any aspect of it, and there was only a bare possibility of reducing the offense to manslaughter.

The defendant not only provoked the difficulty by calling the deceased a thief, but after the deceased indicated that he would resent the insult, he opened his knife and repeated the charge, and after the deceased was pulled away from him, and was being held, he advanced upon him and inflicted the mortal wound with his knife.

When his Honor told counsel that he would charge the jury to return a verdict of guilty of murder in the second degree, if they believed the evidence beyond a reasonable doubt, and counsel replied that in view of his Honor's statement he would not address the jury, this could only mean that the truth of the evidence could not be contested; otherwise, he would have discussed the credibility of the witness before the jury. It does not, however, appear that any exception was taken by the defendant to this statement of the judge, and so far as the case on appeal discloses, there was no exception to the charge to the jury.

It is true that after the charge was delivered and a colloquy ensued between the judge and one of the counsel, that the judge was requested to note an exception to his remarks, but the remarks excepted to are not pointed out, and those immediately preceding were that counsel could address the jury if they desired to do so.

It also appears that there is no assignment of error in the record.

It is possible, as suggested by counsel, that they had no opportunity to note their exceptions, and that the case is not a correct narrative of the trial; but however reluctant we may be to affirm a judgment for a long term of imprisonment when such complaints are made, we cannot base our judgment on them. We find

No error.